**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


**STEPHEN STROGISH**,

       Plaintiff,

   v.

**MICHAEL ASTRUE**,
Commissioner of Social Security,

       Defendant.

**08cv757**
**ELECTRONICALLY FILED**


**MEMORANDUM OPINION**

**December 16, 2008**

    **I.**    **Introduction**

    Plaintiff, Stephen Strogish (hereinafter "Plaintiff" or "Mr. Strogish"), brings this action

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act ("the Act"), seeking

review of the final determination of the Commissioner of Social Security ("Commissioner")

denying his application for  Supplemental Security Income ("SSI") and Disability Insurance

Benefits ("DIB").  Consistent with the customary practice in the Western District of

Pennsylvania, the parties have submitted cross motions for summary judgment on the record

developed at the administrative proceedings.  After careful consideration of the Administrative

Law Judge's ("ALJ") Decision, the memoranda of the parties, and the entire record, the Court

will grant the Commissioner's Motion for Summary Judgment and deny Plaintiff's Motion for

Summary Judgment.

## II.    Procedural History

Plaintiff filed an application for DIB and SSI on May 21, 1999, alleging disability beginning on August 11, 1998.  Plaintiff's claim was denied.  He requested a hearing and chose to have the decision issued based on the record.  Plaintiff was found to be able to perform his past relevant work in a decision issued on July 21, 2000.

Plaintiff reapplied for benefits on February 27 and March 3, 2004, alleging disability due to depression, anxiety, and panic disorder and an onset date of February 7, 2004.  Both claims were denied.  Plaintiff requested a hearing seeking a review of the decisions.  The hearing was held on July 19, 2005.  The ALJ found, in a decision issued on October 14, 2005, that Plaintiff was able to perform past relevant jobs.

On March 10, 2006, Plaintiff filed a fourth application for benefits, again alleging disability due to depression, anxiety, and panic disorder and an onset date of February 5 or 7, 2004[1].  Mr. Strogish's claims for DIB and SSI were denied on August 23, 2006.  He submitted a request for a hearing on October 26, 2006, for which the hearing was held on January 15, 2008. The hearing was held before ALJ Randall W. Moon, who also presided over Plaintiff's previous claims.  Plaintiff, appearing with his legal representative, testified at the hearing along with vocational expert, James E. Ganoe, M.P.A.

Initially, the ALJ sought to resolve the issue of whether the earlier unfavorable decisions which denied Plaintiff benefits should be reopened and revisited in the determination of

---

[1]Although the ALJ initially stated plaintiff's onset of disability to be February 5 or 7, 2004, the Court notes that the remainder of the ALJ's decision simply refers to February 5, 2004. Accordingly, the Court will follow suit and refer to Plaintiff's onset date of disability for his current claim as February 5, 2004.

Plaintiff's March 2006 claim (hereinafter "current claim" or "current application"). As already indicated, Plaintiff had stated in his current application that he was disabled on February 5, 2004, a date that precedes the October 14, 2005 decision finding him not disabled. The ALJ noted that Plaintiff's current claim involved "essentially the same facts and issues as were adjudicated in" earlier claims. ALJ Moon found that, as the March 10, 2006 application date was within two years of the May 24, 2004 date in "which he was initially notified as to the denial of the concurrent applications he had previously filed on February 27 and March 3, 2004", these previous determinations are "amenable to reopening and revising for 'good cause'." Tr. 19.[2]

Ultimately, the ALJ concluded that the principle of *res judicata* applied as there was no new material evidence introduced that could sufficiently serve as a basis for reopening the previous determinations. The scope of consideration was reduced to the period since October 15, 2005 (the day after the date of the previous, unfavorable hearing decision). The ALJ also considered uncontradicted evidentiary findings from the earlier unfavorable decisions (of July 21, 2000 and October 14, 2005) that he found offered support for the conclusions he reached with Plaintiff's current application. Tr. 19-20.

ALJ Moon issued a decision on March 25, 2008, finding that Plaintiff was not disabled. Plaintiff was able to perform simple, routine, one to three step instructions and tasks that required no more than occasional contact with others. ALJ Moon found that Plaintiff could perform his past relevant work of a concrete or general laborer, a carpenter helper, and a maintenance worker. On April 15, 2008, the Appeals Council affirmed the ALJ's decision, thus becoming the final decision of the Commissioner. Plaintiff then filed his complaint herein seeking judicial review of the Commissioner's final decision.

---

[2]Tr. refers to the administrative transcript.

### III.    Statement of the Case

The ALJ found that the record supports the finding of severe impairments which consisted of a depressive/panic-related disorder and a history of polysubstance abuse in partial remission. Tr. 22. Even so, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity criteria of an impairment or impairments listed in Appendix 1, Subpart P, Regulation No. 4 (specifically, Listing Impairment 12.00 Mental Disorders). *Id*.

The ALJ also considered the effect of substance abuse on Plaintiff's impairments and determined that, even considering Plaintiff's substance abuse, there was no evidence of any debilitating psychological symptoms (lasting for any twelve (12) consecutive months during the period at issue) that have imposed "more than mild" limitations on his ability to engage in daily activities, social functioning, concentration, persistence or pace or that has resulted in episodes of decompensation. *Id*.

The ALJ made the following specific findings:

1.    Plaintiff meets the non-disability requirements for a Period of Disability and Disability Insurance Benefits set forth in Section 216(i) of the Act so as to be insured for such benefits through the period at issue, i.e., since October 15, 2005.

2.    Plaintiff has not engaged in "substantial gainful activity" at any time during the period at issue.

3.    Plaintiff has the following medically determinable severe impairments: depressive/panic-related disorder(s) and a history of polysubstance abuse in partial remission.

4.    Plaintiff has had no medically determinable impairments, whether considered individually or in combination, that have presented symptoms sufficient to meet or medically equal the severity criteria for any impairment listed in Appendix 1, Subpart P,

Regulation No. 4, specially, Listed impairments 12.04, Affective Disorders, 12.06, Anxiety-Related Disorders, and 12.09, Substance Addiction Disorders.

5.      Plaintiff has had the residual functional capacity to perform, without impairment-related exertional limitation, a range of work activity that involves only simple, routine, one to three-step instructions and tasks that require no more than occasional contact with others.

6.      Throughout the period at issue, Plaintiff has been capable of performing his "vocationally relevant" past employment as a carpenter helper or concrete worker, as such job(s) were previously performed by him, and has also been capable of performing other jobs that exist in significant numbers within the national economy.

7.      Plaintiff has not been under a "disability", as defined in the Act, at any time during the period at issue, i.e. since October 15, 2005.

Tr. 22-31.

## IV.     Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g) and 1383(c)(3).  Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir. 1983).  The district court's function is to determine whether the record, as a whole, contains substantial evidence to support the

Commissioner's findings. See *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). See *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (quoting *Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), quoting *Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993), quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. See *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of

the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'" *Id.* at 87; parallel and other citations omitted).

<u>Five Step Determination Process</u>

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). See *Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five-step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In step two, the

Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final step [five]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . . *Plummer*, 186 F.3d at 428 (certain citations omitted). See also *Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)).

If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead

satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist

in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to

qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled per se because he or

she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20

C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is equivalent to a Listed

Impairment. See *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

<u>Vocational Expert - Hypothetical Questions</u>

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. See, e.g., *Burns v.*

*Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), citing *Podedworny*, 745 F.2d at 218 and *Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).  See also *Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'")  Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *Id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not necessarily require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand.  *Boone*, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), citing 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is equivalent to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the

impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and specifically explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli* , 247 F.3d at 40 n. 4, citing *Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. See *Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. See *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. E.g., *Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, relying on *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), relying on *Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. See 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. See *Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at

1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green*, 749 F.2d at 1070-71 (emphasis added), quoted in *Mason*, 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present evidence to refute the claim. See *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan*, 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), cert. denied 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. Burnett v. Commissioner of Social Security, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently

"reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

#### State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.")

## IV. Discussion

Plaintiff's primary argument is that the ALJ erred, as a matter of law, when he failed to accord controlling weight to the opinion of Plaintiff's treating psychiatrist, Dr. Roland K. Dye (hereinafter "Dr. Dye") and to the opinion of the consultative psychologist, Dr. John Rohar ("Dr. Rohar"). Plaintiff also argues that the ALJ relied on an inaccurate hypothetical question and based his adverse credibility determination on evidence not present in the record.

A.    Did the ALJ accord proper weight to Plaintiff's treating source's opinions?

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)). . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, quoting *Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ must "explicitly" weigh all relevant, probative and available evidence, must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition, and may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects. *Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). See also *Fargnoli*, 247 F.3d at 42-43 (although ALJ may weigh conflicting medical and other evidence, he must give some indication of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the

evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. Compare 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) with 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002). Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and

XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

Security Rulings require that, because an adjudicator is required to evaluate all evidence in the record that may bear on the determination or decision of disability, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must never be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

ALJs must also consider the findings of state agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). However, the opinions of state agency consultants constitute substantial evidence in support of the ALJ's findings provided they are supported by substantial record evidence. Much like the standards applied to the weighing of treating sources' medical opinions, those of state consultants will not be given controlling weight when it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2).

In the instant matter, the ALJ did consider and address the findings of Drs. Dye and Rohar. Plaintiff cites to a report authored by Dr. Dye on October 22, 2007 and argues that the ALJ failed to "identify any specific competent evidence by an examining physician which contradicts Dr. Dye's medical opinion." Pl.'s Br. at 9. Plaintiff also offers Dr. Rohar's consultative report (prepared four months before Dr. Dye's report) as support of Dr. Dye's findings and asserts that it establishes Plaintiff's marked limitations with functioning in a routine work setting. Tr. 210-211. Plaintiff further asserts that the mental residual functional capacity assessment provided by Dr. Ray M. Milke (hereinafter "Dr. Milke"), and relied on by the ALJ, is no more than an "outdated State Agency check-the-box report" and should therefore, be suspect. The Court finds these arguments lack merit.

Listing 12.00, Mental Impairments, provides that the "evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on the individual's ability to work, and consideration of whether these limitations have lasted or are expected to last

for a continuous period of at least twelve (12) months." Listing 12.00, Commentary A,

Introduction. Here, the ALJ found that plaintiff's depressive/panic-related disorders did not

meet the severity level described by the following mental disorder listed impairments: 12.04,

Affective Disorders[3], 12.06, Anxiety-Related Disorders,[4] and 12.09, Substance Addiction

---

[3]

Listing 12.04 provides, in relevant part:

> **12.04 Affective Disorders**. Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome . . .
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>
> a. Anhedonia or pervasive loss of interest in almost all activities; or
> b. Appetite disturbance with change in weight; or
> c. Sleep disturbance; or
> d. Psychomotor agitation or retardation; or
> e. Decreased energy; or
> f. Feelings of guilt or worthlessness; or
> g. Difficulty concentrating or thinking; or
> h. Thoughts of suicide; or
> i. Hallucinations, delusions, or paranoid thinking; or
>
> \* \* \*
> AND
>
> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.
>
> OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

[4]

Listing 12.06 provides, in relevant part:

**12.06 Anxiety-Related Disorders**: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms . . .
The required level of severity for these disorders is met when the requirements in both A and B are satisfied . . .
A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
     a. Motor tension; or
     b. Autonomic hyperactivity; or
     c. Apprehensive expectation; or
     d. Vigilance and scanning; or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the following:

Disorders[5].  Tr. 22.  In making his determination, the ALJ considered Plaintiff's alleged

symptoms and daily activities and the opinion evidence of Plaintiff's treating sources and of the

State Agency medical and psychological consultants.   He noted that Plaintiff had not required

any hospitalization and had not seen a therapist during the period at issue.   The record shows that

Plaintiff's depression was well managed by his medications.   The ALJ stated:

> The claimant appears to be highly functional.  He is active physically and maintains
> enjoyment in activities.  Although he asserts that his alleged symptoms preclude his
> ability to maintain gainful employment, it does not appear that they greatly limit his other
> activities and pursuits. . . . The claimant is not even participating in therapy at present . . .

---

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

OR

C. Resulting in complete inability to function independently outside the area of one's home.

[5]

 Listing 12.09 provides, in relevant part:

**12.09 Substance Addiction Disorders**.  Characterized by behavioral changes or physical
changes associated with the regular use of substances that affect the central nervous system.

The required level of severity for these disorders is met when the requirements in any of the
following (A through I) are satisfied.

A. Organic mental disorders. Evaluate under 12.02.
B. Depressive syndrome. Evaluate under 12.04.
C. Anxiety disorders. Evaluate under 12.06.
D. Personality disorders. Evaluate under 12.08.
E. Peripheral neuropathies. Evaluate under 11.14.
F. Liver damage. Evaluate under 5.05.
G. Gastritis. Evaluate under 5.00.
H. Pancreatitis. Evaluate under 5.08.
I. Seizures. Evaluate under 11.02 or 11.03.

[and has stated to his doctor] that he had no problems and his medications were working. . . .

Tr. 28.

The ALJ also provided reasons as to why he rejected Drs. Dye's and Rohar's opinions. He noted that the record did not support Dr. Rohar's assessment of Plaintiff's marked limitation in his ability to carry out daily activities, maintain social functioning and respond appropriately to work related pressures. Tr. 29. There was no indication in the record of Plaintiff suffering from impairment-related psychological symptoms that would have precluded him from performing in a work setting. Indeed, the Court notes that Dr. Rohar's marked limitation assessment was contradicted by his own narrative report. Tr. 210-218.

In addition to finding that Plaintiff had a marked limitation in responding appropriately to work pressures in a usual work setting, Dr. Rohar found that Plaintiff had only moderate restrictions with regard to understanding, remembering and carrying out detailed instructions, making judgments on simple work-related decisions, interacting appropriately with supervisors, co-workers and the public and responding appropriately to changes in a routine work setting. Tr. 210. Plaintiff had no restrictions with regard to understanding, remembering and carrying out short, simple instructions. *Id*. Dr. Rohar also noted that Plaintiff's appearance was neat and clean. Tr. 215. Plaintiff's remote and recent memory included being able to give a detailed history and recall events from the past and in the present. *Id*. Plaintiff reported to Dr. Rohar that he could function in social settings, although there are certain times where he feels that people are staring at him. Tr. 216. These findings are incongruous with Dr. Rohar's marked limitation observation and appear to belie the purported severity of Plaintiff's limitations. Tr. 212-218.

In reviewing the record, the ALJ concluded that another consultative report, conducted by Dr. Milke on August 18, 2006, more accurately reflected the evidence contained in the

record.  Dr. Milke, in completing the mental residual functional capacity assessment on August 18, 2006, had the opportunity to fully review Plaintiff's records and Dr. Rohar's assessment.  Tr. 219-235.  Contrary to Plaintiff's argument that Dr. Milke's assessment was no more than a check-in-the-box report, Dr. Milke's report includes an explanation of his findings.  Tr. 221.

Dr. Milke observations about Plaintiff's condition were similar to Dr. Rohar's findings.  Dr. Milke noted that Plaintiff had moderate limitations with regard to carrying out detailed instructions and responding appropriately to changes in a work setting.  Tr. 220.  Likewise, Plaintiff had no limitations in understanding and remembering short and simple instructions.  *Id*.  These limitations did not significantly inhibit Plaintiff's ability as to concentration, persistence or pace nor was there evidence of the likelihood of the limitations resulting in episodic psychological decompensation.  Tr. 221.  Ultimately, Dr. Milke concluded that Plaintiff's limitations including that of dealing with work stresses and public contact would not prevent him from "performing the basic mental demands of competitive work on a sustained basis."  *Id*.

As stated earlier, Dr. Dye completed a mental status questionnaire, in October 2007.  Tr. 253-255.  Dr. Dye diagnosed Plaintiff with schizoaffective disorder and depression.  *Id*.  He reported that Plaintiff suffered from a mild limitation in performing daily living activities while experiencing marked limitations in social functioning and in concentration, persistence and task completion.  Tr. 254.  Dr. Dye observed that Plaintiff's response to his psychotropic medication had been variable and his prognosis was guarded.  Tr. 253.  Dr. Dye also stated that he did not believe that Plaintiff was "capable of employment of any kind."  Tr. 29, 255.  Medical opinions such as those reported by Dr. Dye are to be accorded substantial weight, but not any special

significance, because they are on matters reserved to the Commissioner. A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, citing *Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990). (internal citations omitted). See also 20 C.F.R. § 404.1527.

In arguing that Dr. Dye's opinion of disability in his October 2007 deserves paramount consideration, Plaintiff makes much of the aforementioned *Morales* cardinal principle of the ALJ according significant weight to treating sources' reports, especially when the opinions are borne of a "continuing observation of the patient's condition over a prolonged period of time." Pl.'s Br. at 7. The record, however, reveals that Dr. Dye's October 2007 report was completed after having seen Plaintiff only twice before the submission of Dr. Dye's mental assessment report, and almost three months after Plaintiff's first visit with Dr. Dye. Tr. 240, 255.

Plaintiff initially met with Dr. Dye on August 6, 2007. Dr. Dye worked as a psychiatrist at the Washington Communities Mental Health Center ("WCMHC"). The visitations with Dr. Dye marked a continuation of Plaintiff's receipt of medical help at WCMHC. Indeed, Plaintiff's first visitation during the scope of consideration was on December 13, 2005, where he reported his mood as being fair. Tr. 200. Although Plaintiff had suffered a panic attack prior to his visitation, he stated that he had not been depressed in the past month. *Id*. Plaintiff also stated that his medications were working. *Id*. On February 21, 2006, Plaintiff returned to WCMHC with reports of a day-long bout with anxiety. Tr. 199. His feelings of depression persisted through the morning but had subsided in the evening. *Id*. Plaintiff reported that despite his occasional suicidal ideation, he had no suicidal plan and would never commit suicide. *Id*.

Plaintiff visited WCMHC on May 5, 2006 and July 10, 2006 and reported that his sleep and appetite were okay and he was not depressed. Tr. 199, 242. He also reported feeling better with his current medications. *Id*. On September 18, 2006, Plaintiff stated that he was not restless, was shaking less and was not panicky. Tr. 241. He also stated that he had been denied SSI and was currently looking for a job. *Id*. On November 17, 2006, Plaintiff reported having suffered a panic attack and not being able to function. *Id*. He did report a few of his activities which included taking walks, playing the guitar and going to the gym. *Id*. Plaintiff returned to WCMHC in January 2007. Tr. 240. He said he was not feeling well and was generally tired. *Id*. By March 5, 2007, Plaintiff's symptoms had come to include nervousness. *Id*.

During his visit with Dr. Dye on August 6, 2007, Dr. Dye reported that Plaintiff was "overall doing ok[ay]" and had not taken his Zyprexa medication "for a long time." Tr. 239. Plaintiff again saw Dr. Dye on September 17, 2007. Tr. 238. Dr. Dye observed that although Plaintiff was "maybe a little more depressed," not much had changed. Tr. 238. Dr. Dye also noted that Plaintiff was "pursuing disability." *Id*. Plaintiff saw Dr. Dye on November 5, 2007 and December 10, 2007. Tr. 238, 259. Again, Dr. Dye observed that Plaintiff's condition had not changed despite feeling anxious and panicky. *Id*. Plaintiff had also not suffered any full-blown panic attacks. *Id*. Although Plaintiff had not evidenced much improvement with his anxiety, Dr. Dye did observe that there were "no s/s [signs/symptoms] or c/o [complaints of]" anxiety. Tr. 259; Def.'s Br. at 12. By February 11, 2008, Plaintiff, was overall, feeling better. *Id*. Plaintiff still had anxiety problems and had come "close" to suffering panic attacks. *Id*.

Dr. Dye had stated in his October 2007 report that his opinions were based on a review of Plaintiff's records as well as an examination of Plaintiff. Tr. 255. Dr. Dye had reported that Plaintiff's symptoms first surfaced in 1997 and that he had been at the current setting of being unable to work since 1999. Tr. 253. This report does not account for what would prove to be Plaintiff's most productive years (2001-2003) where he earned more than $15,000 and possessed a functionality that went beyond what having "marked" mental impairments would allow. Tr. 25, 29, 137-143.

Plaintiff disagrees with this particular finding and argues that the fact that he worked before filing for benefits does nothing to discredit Dr. Dye's opinion. This Court disagrees. It is clear from the ALJ's opinion that he was merely questioning the legitimacy of an opinion that maintains that Plaintiff has not been "capable of employment of any kind" over a ten year period when the record of Plaintiff's *actual* employment history establishes the opposite. Tr. 137-143. The ALJ ultimately rejected Dr. Dye's opinion of Plaintiff's disability in the October 2007 report because it appeared to have been based on Plaintiff's subjective complaints and because the record, which includes Dr. Dye's own treatment notes, refutes Dr. Dye's findings. Tr. 29. Thus, the Court finds that the ALJ relied upon more than personal observations and speculation, and that his findings are supported by substantial medical evidence.

B. <u>Was the hypothetical question posed by the ALJ to the vocational expert accurate</u>?

Plaintiff argues that the ALJ made an improper determination in finding that Plaintiff could perform a range of work that is limited to only simple, routine, one-to-three step instructions and to other tasks that would require no more than occasional contact with others. Tr. 23. He contends that the ALJ erred in not according more significant weight to Dr. Dye's opinions and consequently, in not incorporating into the hypothetical question Dr. Dye's finding

that Plaintiff experienced marked limitations in his social functioning or concentration, persistence and task completion in the hypothetical question. As the Court has already addressed the factual bases underlying this argument, and found that the ALJ properly assessed plaintiff's mental impairments based on substantial evidence of record, the Court need not, and will not address this contention. Accordingly, the Court finds that the hypothetical question was accurate.

      C.    <u>Was the ALJ's adverse credibility determination erroneous</u>?

Plaintiff contends that the ALJ's adverse credibility determination, with respect to substance abuse, was erroneous. He asserts that the ALJ's reliance on his history of polysubstance abuse was not supported by any part of the evidence of record as the exhibits he references are not present in the record.

The Act mandates that the Commissioner "shall file a certified copy of the transcript of record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g). The Court, in turn, examines the record as a whole in determining whether the ALJ's findings are supported by substantial evidence. See *Adorno*, 40 F.3d at 46. If a court is unable to engage in meaningful or informed judicial review due to an incomplete administrative record, the court has the authority to remand the case. See *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 594, 100 (1980). Remand, however, is not an automatic requirement provided that the transcript, albeit incomplete, contains ample evidence to provide for meaningful review. *Id*.

In the case at bar, a significant portion of the ALJ's credibility determination revolves around Plaintiff's history of polysubstance abuse. The ALJ found that there were inconsistencies in Plaintiff's report of substance abuse. He had provided conflicting statements in July 2001, January 2003 and May 2004 about the extent and length of his alcohol and drug use. Tr. 26. Plaintiff had reported in July 2001 that he had used drugs from the ages of fifteen (15) to twenty-five (25). Tr. 25. In January 2003, he stated that he had stopped using drugs at the age of twenty. *Id*. In May 2004, Plaintiff admitted to having drunk beer two days before his visitation with a therapist and also indicated that his marijuana use had encompassed the ages of fourteen (14) through thirty-five (35). *Id*. There was also some indication that his use of alcohol spanned this three-year period. Tr. 26. The ALJ also questioned the veracity of Plaintiff's assertion that he had quit his job in February 2004 due to an inability to work when just a month earlier, he had informed a therapist that he was "doing well" and had enjoyed "good holidays." *Id*.

The ALJ's findings were based on documents that were missing from the administrative record (Exhibits B2E, BF, B1F and B2F). While these documents are relevant to the ALJ's credibility determination (and this Court's review of same), the missing exhibits do not affect the Court's ability to engage in a meaningful judicial review of the ALJ's disability determination in this case.

The missing records may be relevant to plaintiff's substance abuse problem, but they are not material to the ALJ's determination that, regardless of the existence of substance abuse, plaintiff's mental impairments were not markedly severe so as to render him disabled within the meaning of the Listed Impairments. Thus, the Court finds that the administrative record provides a clear picture establishing that the ALJ's decision that Plaintiff was not disabled is

based on substantial evidence, and not on the ALJ's findings about plaintiff's credibility viz the scope of his substance abuse.

**V.      Conclusion**

The Court has reviewed the ALJ's findings of fact and decision, and determines that his finding that plaintiff was not disabled under the Social Security Act is supported by substantial evidence.  Accordingly, the Court will grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's and enter judgment in favor of the Commissioner.

An appropriate order will follow.

_/s/ Arthur J. Schwab_
Arthur J. Schwab
United States District Judge

cc: All counsel of record listed on ECF